Welcome and thank Judge Eaton from the International Court of Trade, who's sitting with us this week. Judge Eaton, thank you and welcome. Thank you. The cases will be called in the order listed on the docket. The first three cases have been removed from the oral argument calendar. Vandari v. Rosen has been submitted on the briefs. Decker v. Vivitz has been dismissed. And Wainwright v. Melaleuca has been submitted on the briefs. The first case on calendar for argument is B. F. v. Amazon.com. Counsel for Appellant, please approach and proceed. Please proceed. Mr. Polgrum. Thank you, Your Honor. Lawrence Polgrum for Appellant, Amazon.com Inc. May it please the Court. The District Court erred in not following the basic rule of equitable estoppel. A non-signatory who knowingly exploits a contract for benefit cannot simultaneously avoid the burden of arbitration. The District Court held the children in this case did not receive a direct benefit. That was incorrect. The children received the entire and only benefit of the Alexa contract, its full performance in response to their commands. Plaintiffs used the Amazon service directly, calling out the wake word Alexa, play next song, Alexa, what's 32 times 22, to avail themselves of the almost limitless range of entertainment and convenience that Alexa offered. And when they did so, these benefits did not become indirect merely because they were non-signatories. The entire purpose of estoppel is to determine when non-signatories may be bound. The District Court's order denying arbitration on the basis of no direct benefit, therefore, should be reversed. The District Court also stated it was unclear whether the State of Washington applied direct benefit to estoppel after Townsend v. Quadran. But nothing in Townsend precludes direct benefit estoppel here. Townsend drew no bright-line legal rule precluding estoppel even in tort cases. Just the opposite, the Townsend, even the five-vote dissenting opinion in Townsend, which plaintiffs claim controls, found only an insufficient factual basis to apply equitable estoppel to the tort claims in that case. Mr. Pilgrim, does it matter at all that the plaintiffs aren't suing on the contract? They're not suing to enforce the contract. Their claims are all outside of the contract. Excellent question. The direct benefits estoppel rule, which this Court has defined in the Winn case, identifies two types of equitable estoppel for knowing exploitation. One is to sue on the contract. The other is to take benefits sufficient to, in equity, require that the terms of the underlying contract providing the benefits be ordered. So you're exactly right, Your Honor, that in order to make estoppel work under the first prong, which is suing on the contract, you need to have a claim on the contract or a contractual type of claim. But to make a claim for direct benefits estoppel does not require that. Rather, it looks at the nature of the benefit received, and that's where Townsend is so very different from this case. Counsel, can I ask a question about Winn? When I read Winn, I read both of them as conjunctively. It says, you know, knowingly exploits the benefits of the agreement and receives the benefits loaned directly from the agreement. So you read them as two separate tests versus them as a conjunctive test? We do, and that's the way they've been read in the other circuits that we cited. And for that matter, in Stewart versus Corey in Washington, the two tests operate side by side. And in the case of Townsend, the nature of the benefits, the factual question of whether or not there is sufficient facts, is where that case is so different from this case. In Townsend, you had children who were the passive occupants in their family's moldy, toxin-infested home who never did anything to avail themselves or exploit the benefits of that builder agreement that was at stake in that case. Those were persons who fit more like this court's example of Comer, a passive beneficiary who never affirmatively exploits an agreement. In Townsend, though, the pivotal issue was whether or not they were suing to enforce the terms of the purchase and sale agreement, which was the contract. So that gets back to the question that Judge Eaton asked. If you're not suing on the operative agreement, how does your theory work to compel arbitration? Right. And in the dissent in Townsend, which was the five votes, the court said that merely bringing a contract claim, that is, suing on the contract, was not enough to take those tort claims into arbitration. The nature of that claim, and this goes back to Judge Gumate's point, the nature of that claim is not alone what defines whether or not there will be estoppel. You have to look at the facts, too. You need to look at whether or not those facts give rise to the sort of equity that requires estoppel. And that's exactly the situation here. By contrast to Townsend, in this case, the plaintiff's families signed up for the Alexa service. They bought up to dozens of devices. They used them all the time because they're avid users who love the service. They used them anyway, and the plaintiffs used them any way they wanted. The devices were put in some plaintiff's rooms. They were named for the plaintiff's children. The entire purpose of the family's relationship with Amazon was that they entertain and provide information to the plaintiffs. So the plaintiffs asked, what's 22 times 32? What's the height of Mount Rainier? What's the SAT word of the day? Yes, counsel, we realize that, but that begs the question. The question is, does that compel them to arbitrate when they were not signatories to the contract? That's exactly right. And that's where our reading of the Townsend dissent is, that it focuses on the first prong, focuses on this question of whether or not a claim on the contract has been raised. Then, once it says merely raising a claim on the contract, doesn't decide the issues and can't necessarily sweep tort claims into arbitration. Counsel, under the facts of this case, what was the claim under the contract that was made by the children? In this case, the children claim a violation of the Wiretapping Act. And in their complaint, they allege that they are exempt from the contract that their parents entered because they did not register the devices. What was the contract claim? What was it in the contract that was the predicate for their claims? The benefit received from the contract under the Winn case is the predicate for estoppel here. They did not assert a claim on the contract. They assert that the contract provided them this benefit and that the very benefit that was provided to them is illegal. They're relying on the benefit that they received and the benefit that their contract authorized. And remember, in the contract here, the contract specimen… Mr. Pilgrim, the benefit that they derived was finding out what happens if you multiply 12 times 12. The listening and recording of their voices was not a benefit to them, was it? Their listening and recording of their voices was essential in order to get the response, as was described to them in the contract itself. Voices will be transmuted into digital files so that a computer can respond to it, sent over the Internet and returned. But the whole point is that they didn't agree to that. That's the whole point. That benefit could have been… I mean, they were not aware, they say, that their voices were being retained. But that is, of course, exactly what the contract that their parents signed said, or that their parent entered. And it's undisputed that their parents were bound by that contract. And to go further on that point, I think we need to focus as well on the fact that these minors were well aware and continued to use the advantages of this agreement, even after they filed this lawsuit. The record reflects that in the case, for example, of the Burris family, the devices continued to be named for the kids and continued to use Kidskill even after their files sued. And even after their complaint acknowledged or asserted that because plaintiffs were not registered users, they never agreed. In other words, knowing that there were terms in place and knowing that those terms were governing the service, these plaintiffs went forward and continued their use. And they continue now to claim that every time they ask what's 12 times 12, they can rack up another $5,000 in statutory damages, notwithstanding that they're fully aware. Counsel, I think that's how the Second Circuit ruled in Nicholas C., I believe. But what does that do to the claim prior to their suits, though? I could see that, you know, cleansing their use after the suit, but how does that cure what happened before the suit? That, as in Nekosha, requires them to go to arbitration because it amounts to an agreement to arbitrate. Nekosha was the same thing. After the lawsuit, the plaintiff continued to use Amazon's account. And I think – and I'm going to try to reserve a couple of minutes for rebuttal, if I may. I believe it's my clock I'm supposed to run here with directions from the bench. I did want to raise one other very important point that's related, and that is the error in the district court's assumption that the parents here didn't consent to arbitrate on behalf. The district court noted that the Amazon agreement could have been more expressed in the language that it used. And the plaintiffs argued the same thing in the lower court. The plaintiffs claimed at ER 204 that with a few more keystrokes in the contracts, we wouldn't be here because they would acknowledge that the parents had entered the agreement on behalf of the kids. Now, we disagree that more keystrokes were required because the Amazon terms provide you, the parent, agreed to accept responsibility for all activities that happened under your account. The parents from the outset agreed to do that. But even if that weren't expressed consent to the terms on behalf of their kids, that asks the question, wasn't it implied consent, as in Nekosha? I don't mean to cut you off, Judge Rawlinson. Well, I was just going to ask you, if we agree with you that continued use of the device is constituted agreement to arbitrate, when would that agreement be effective? It would be effective from the beginning of the lawsuit, at least. But it would actually, under the Amazon agreement, as in Nekosha, it is an agreement to arbitrate, which takes us to arbitration, and the arbitrator then deals with the matter. There's a valid arbitration agreement in place, and it would be governing. Can I ask one quick question before you turn to rebuttal? If I agree with the district court that it's unclear whether or not Washington adopts a direct benefit estoppel as Amazon would want it, do you have a position on certifying that to Washington courts? We don't think it's essential, but it's obviously up to this court if you think it would be helpful, Your Honors. And to return and complete the one thought that I had before rebuttal, if that's sufficient, Judge Romante. It's Judge Bumate. Bumate. I'm trying to be correct. We appreciate that. The point was, even if there was an express agreement by virtue of the taking of supervisory responsibility, the question is, didn't the parents impliedly agree that they were going to, on behalf of the kids, when they took these devices, named it Jack's Echo, and encouraged that? Well, but isn't this an adhesion contract? You wouldn't think that you would, and you're trying to enforce it. You wouldn't think that you could read too much into an adhesion contract. But you can read consent into conduct, Your Honor. And that's what we're saying here. If, and the Nicosia case cites Washington law to discuss conduct that a reasonable person would understand to constitute consent, here it's undisputed that the parents agreed to the terms, and they didn't challenge the validity of the provision. Now, if it binds them, and they then say, here, Jack, use this Echo, keep yourself busy, stay out of my hair, how can that not be an implied consent that their kids get to use it, only to the extent of being bound by an arbitration agreement? And I'll reserve the little time you'll give me on rebuttal. All right. Thank you, counsel. Thank you. Repulseman? Thank you, Your Honors. May it please the Court. Warren Postman for the appellees. Amazon has entirely misstated the law in other states and other circuits and created a wildly overbroad version of the direct benefits test that's not the law anywhere. But the simple fact is Washington law governs this appeal, and the Washington Supreme Court's majority decision in Townsend is the beginning and end of this case. At the outset, though, I think it's important to clarify one factual point and one legal point. As a factual matter, Amazon chose not to restrict the use of Alexa to individuals who had agreed to the Alexa terms or Amazon conditions. Amazon, and it was just occurring, tries to pretend otherwise, but the complaint alleges the district court found, and everyone knows the following. This is from ER7. Once an Alexa device is set up, Amazon allows any individual, regardless of whether they are an account holder, to use Alexa without creating an account. Is that a technological limitation, or is that a choice that Amazon made? It's a choice in that Alexa easily could say when it hears a voice it doesn't recognize, and it does recognize voices. It could easily say, hi, haven't met you before. To proceed, you'll need to agree to the terms and conditions, which are at Amazon.com slash Alexa. It could do various things, but the fact of the matter is the contract is written, and to add on that, within the— Could a child agree to that contract, and would that be legally binding? Well, I believe for the child it could be disavowed. For the issue of children, and that was the additional point I was just going to make, we, as Mr. Pilgrim noted, agreed that if Amazon had written its contract to say that you agreed to bind people in your household to these terms to the extent possible, that's a very different case. The simple fact is the terms don't purport to do what Mr. Pilgrim was suggesting the court should do. That's the very reason this is absolutely different from NACOJA. In that case, to do what the plaintiff did, you had to actually click through the terms, and that's why the Second Circuit said the plaintiff was actually bound. And here, it's also the reason continued use doesn't matter. Assume the children or the parents were aware of the terms and continued to use the product. The terms don't say that using the product is a condition, or that accepting the agreement is a condition of using the product. So there is a fundamental difference here in the underlying contract, and that ties into the legal point, a broader legal point I'd like to make. The rule that covers 99.99% of cases is that only a signatory to a contract can be required to arbitrate. This court made clear on Monday equitable estoppel is a, quote, very narrow, end quote, exception with limited defined parameters. And just to illustrate, in all of the briefings... All right, counsel, can I just go back to the question, the point you made earlier? I thought I was just looking at the contract terms. It says by using Alexa, you agreed to be bound by those terms, and the terms include the arbitration agreement. Right, but you is referring to the account holder, right? So to take it as an analogy, if my mother's cell phone contract from Verizon was sitting on the kitchen table, and I picked it up and perused it, and it says you agree to all these various terms, the you is my mother, and if I later use her phone to set a timer for dinner, the contract doesn't say I'm bound to the Verizon terms. It says my mother is, and that's what this contract is doing here. Again, the district court made a finding that has not been challenged as an abuse of discretion, and that is based on the complaint that anyone can use an Alexa contractually without agreeing to a contract, and that finding controls. To return to the legal point, in all of the briefing before this court, there's one case, only one in which a Washington court has ever applied equitable estoppel to require a non-signatory to arbitrate. That's David Terry, which I can speak to. There are only two federal cases that have ever applied Washington law to hold that a non-signatory was required to arbitrate. That's Payne and Nicosia. Can I ask, so is your position that Washington courts would not adopt this direct benefits equitable estoppel, or they would not adopt the version as Amazon presents it to be? They would definitely not adopt the version as Amazon presents it. If I can pick up on one of your questions, Judge Bumate, I actually think that the knowingly exploit and direct benefits formulations, they're not disjunctive or conjunctive. They're actually saying the same thing. The cases say that you don't directly benefit from a contract unless you are invoking rights under it. So, for example, MAG Portfolio Consult, it said that a benefit is directed to bring claims under the contract. By contrast, the benefit derived from an agreement is indirect, where the non-signatory exploits the contractual relation of parties to the agreement, but does not exploit and thereby assume the agreement itself. And this, of course, is the same point. I mean, the Supreme Court of Washington and counts necessarily held this because there can't be a more substantial benefit than having a home. The children got a home from the contract, and that flowed. The parents' contract was a but-for cause of that benefit. They weren't invoking claims under the contract, so it would be an indirect benefit. But to be clear, the Washington courts simply don't use that formulation. You can search in Westlaw the phrase direct benefit and anywhere else in the opinion, some variation of equitable estoppel. Zero cases. That's just not the formulation they use. They use the knowingly exploits. Yeah, and that's my question. But how do we know that they wouldn't adopt that in the future? Well, this goes to how narrow the doctrine is. I guess it goes to the idea that, as the Ninth Circuit said in Comer, the courts don't extend equitable estoppel beyond these narrowly limited circumstances. And I respectfully submit that the role of a federal court in interpreting and applying state law is to apply the law as it sits, not create extensions or expansions. I thought our role is to predict how the state courts would rule on the issue. I think that's right if you think there's ambiguity. I don't think there's ambiguity, but you're right, Judge Bumate. I think it depends whether you view this hypothetical as expanding versus resolving an ambiguity. Yeah, can I ask, is there any state that has actually expressly rejected a direct benefits estoppel? Well, again, I think Townsend did in that it wasn't using the magic words because that's not the way Townsend talks about it, but there couldn't be a more direct benefit than getting a home. Courts use different formulations of standards. I mean, you could imagine the learned-intermediary doctrine in different states. They all have it. But if there's a formulation in a particular state and you're trying to drill down to what a court would do on the specific facts, I'd submit that the best way to analyze that is to use the standard and logic as developed by that state's courts. What do you make of Amazon's argument that the Washington courts have looked to what the Ninth Circuit has recognized as equitable estoppel and in when, which happened after Townsend, the Ninth Circuit did seem to recognize, at least under California law, a direct benefits estoppel. So why is it not reasonable to think that Washington might also adopt that direct benefits estoppel? Right. Two points. One, in all of these cases, it's really remarkable if one looks at the cases from which Amazon's drawing the standard. The courts are rejecting equitable estoppel. The Ninth Circuit has never applied equitable estoppel. And that's important in this context. It's important because courts often reference other cases that the parties have mentioned, cite various standards, note that a plaintiff hasn't benefited, you could note a bunch of factors. But these are not holdings. The court has not applied simply because it's described various standards. The standard, if it doesn't hold that there is equitable estoppel. I think what the Washington courts have done is reference the general formulation of the knowingly exploit test, which is the language they use. Again, I think these are going to the same basic question. Do you have a position on whether or not you should certify that question to Washington? To give the obvious and self-serving answer, I think this is a very clear case in our opinion. And so if you're going to rule for us, you should do that. That's not an answer. Regardless of how we're inclined to rule, is this a question that should be certified to the Washington Supreme Court? Respectfully, Judge Rawlinson, I think the standard, and it's obviously your decision, I think the standard I would think of as to whether to certify is wrapped up heavily in whether it is a hard question. Because there's plenty of easy cases, and I'd submit this is one under Townsend. And so for that reason, I don't believe it should be submitted. If the court thinks it's a hard case, I do agree that this is consequential. I think, frankly, it would be incredibly consequential. And that ties into the other point I was going to make, which is Amazon, in order to avoid utterly absurd consequences, points to a host of limiting factors. But none of them tie into the rationale for equitable estoppel, which is fundamentally grounded on did a party take inconsistent positions. They're ad hoc, and they themselves are hard to limit. So what is a close relationship? What is a direct versus indirect benefit if living in a home or enrolling? Well, maybe you could just straighten me out a little bit. Is the distinction you make between direct and indirect just a little too neat? I mean, the sole subject of the contract is the provision of a service. And it was the service itself that the plaintiffs exploited, used. So why isn't this really a suit on the contract? Just because your argument is that it was an invasion of privacy, why isn't it ultimately a suit on the contract? Thank you, Judge Eaton. Because I think when the courts talk about direct versus indirect and knowingly exploit, they're talking about the source of the duty that was violated and the source of the rights, and not the fact that someone obtains a service or product. And so the source of the duty here as a statute has nothing to do with the contract. To use an analogy— But doesn't the contract itself tip you off that your voice is going to be recorded? We certainly have disputes about that that will be litigated on the merits, but that is something that the contracting party sees and not the non-contracting party. To pick up on your point about the sole purpose, the sole purpose of getting electricity is to have the electricity. If tenants in an office building flip on a light switch, they're directly and actively taking advantage of the sole reason for an electricity service. I don't think that because the landlord has a contract with the electricity company that the tenant is bound. And this really goes to—one can look at all of these cases, and in every case applying Washington law, and virtually every case in any jurisdiction, there's really only two situations where this applies. One is what we've been talking about where a party invokes claims under the contract. And the other is where a party obtains access to a service or a product that they are only allowed to get if they are a contracting party. They effectively mislead the counterparty into believing they're the account holder. And that's the Nicosia case. That's the Bridge case where parties enter the login information for someone else. Equitable estoppel is fundamentally based on a party taking inconsistent positions. I think there are direct benefit estoppel cases holding that a passenger in a rental car is bound by the rental agreement. That's Hofer, and Hofer expressly says that the court believed the party was bringing— and it's in the sort of holding part—claims under the contract. So it says, in sum, right where it's holding, because Hofer only seeks the direct benefit of the agreement and seeks to exploit the benefits of the agreement by alleging breach of duty that arose from that agreement, the doctrine of direct benefits estoppel applies. I actually think that ties up nicely what's going on here. The court referred to both exploiting the benefits and direct benefits and said that what made it was direct was that the plaintiff was alleging breach of a duty that arose from the contract. I see I'm out of my time. I will, of course, answer any questions. It appears there are none. Thank you, counsel. Mr. Pogrom, we'll give you a minute for rebuttal. Thank you, Your Honor. First, there's no dispute that use continued after notice of the existence of the terms. That should be dispositive. Second, Mr. Postman acknowledged that Townsend did not expressly reject the direct benefits test. He argues that it must be implicitly have been rejected because the benefit of a house is a big benefit. But the house here was moldy and defective. No one in that case argued that the house had been properly performed and that they still wanted to sue on it, notwithstanding someone having consented to exactly what the wrong is. And that's what we have here, a lawsuit based on full performance of the contract, alleging that the very contract that authorized exactly that performance should be ignored. That is fundamentally inequitable. Third, Mr. Postman speaks about the idea that if he picked up his mom's phone, he shouldn't be bound by the terms. Now, wait a second. All of us use household services together in our households. The idea that the only person who would be bound by those terms is the signatory means this. It means no one can use Netflix other than the person who signed up for it. We can't pick a movie in our house. We can't change the channel using voices on Comcast because if we did, we would be Netflix, Comcast, Amazon, allowing someone who wasn't within the scope of the contract to act, which of course it can't do. Well, counsel, I think that's not as broad as that. Here, I'm saying that if the lawsuit is not predicated on the contract, we have a different issue than if the child were suing specifically to enforce the contract that his or her parents signed. I completely understand, and I think it is an important point, the two branches, and whether or not this court should have that certified or not. The point that we would close with is this. We're talking here about a shared account among intimate family members who proactively used the entire and full performance of the agreement, calling out voluntarily for the service that they wanted. That is not the broad and expansive rule. That focused on a claim that asserts the performance of the contract as the wrong. That is exactly where the target of equitable estoppel should be. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case, as argued, is submitted for decision by the court.
judges: Rawlinson, Bumatay, Eaton